IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**BENJAMIN L.,**

        **Plaintiff,**

v.                               Civil Action 3:22-cv-254
                                   Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Benjamin L., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **GRANTS** Plaintiff's Statement of Errors (Doc. 8), **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff protectively filed his applications for DIB and SSI on April 27, 2020, alleging disability beginning March 1, 2020. (R. at 191–210). After his applications were denied initially and on reconsideration, Administrative Law Judge Heidi Southern (the "ALJ") held a telephone hearing on May 10, 2021. (R. at 36–62). The ALJ denied benefits in a written decision on June 24, 2021. (R. at 14–35). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–8).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on September 2, 2022 (Doc. 1), and the Commissioner filed the administrative record on October 31, 2022 (Doc. 7). The matter has been briefed and is ripe for consideration. (Docs. 8, 9, 10).

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and the testimony from the administrative hearing as follows:

> [Plaintiff] asserted that he is unable to work due to hepatitis C, hepatitis B, hepatic steatosis, hypertension, decompensating exophoria and exotropia, obesity, bipolar disorder, social anxiety disorder, and a history of polysubstance abuse. [Plaintiff] indicated that he experiences double vision. He noted he can walk about a mile before needing to rest. He also stated that he wears glasses for his vision problems. However, [Plaintiff] testified that his glasses have caused him to see double. He noted that his vision problems have affected his ability to drive.
>
> [Plaintiff] reported that he has trouble with his memory, understanding, and concentration. He stated that he experiences both long and short-term memory problems daily. He noted short tasks as easier for him to follow, but he cannot retain spoken instructions. [Plaintiff] indicated that he can only pay attention for about twenty minutes and cannot complete tasks. He also testified that he experiences mood swings, anxiety, and hallucinations, which affect his ability to handle stress and changes in routine. [Plaintiff] also reported problems getting along with others and social isolation (Exhibit 4E/6-7; 8E/6-7; Hearing Testimony). Regarding activities of daily living, [Plaintiff] reported that he is able to perform personal care activities independently. He is able to prepare meals and perform light household chores, including cleaning and laundry. [Plaintiff] can drive and can go shopping in stores for short periods. Although he does not pay bills, he is able to count change and handle a savings account. [Plaintiff] also reported that he is able to talk with friends by the phone (Exhibit 4E/2-5).

(R. at 22–23).

### B. Relevant Medical Evidence

The ALJ summarized the medical records as to Plaintiff's mental health treatment as follows:

> Mental status evaluation in July 2020 showed abnormal concentration findings, including shifting focus frequently and hypothymic, constricted affect. However, [Plaintiff] had "pretty good" mood and otherwise normal findings. He also reported

2

little to no paranoia or rage with his medication regimen. He was diagnosed with bipolar II disorder, social anxiety disorder, severe opioid use disorder, moderate methamphetamine-type substance stimulant disorder, and substance-induced psychotic disorder (Exhibit 4F/81-82). [Plaintiff] presented for a psychiatric evaluation in August and September 2020. He reported that he was doing okay and "feeling pretty stable" (Exhibit 4F/50, 74).

[Plaintiff] presented for a psychological consultative examination in September 2020. [Plaintiff] reported that his mood fluctuates. He noted he will feel "fairly stable" and later feel "paranoia" and "scared". Although he reported appetite loss on his medications, he indicated he had improved sleep. In regards to his anxiety, [Plaintiff] reported shortness of breath and increased heart rate, as well as paranoia, especially around others. He endorsed auditory hallucinations on a weekly basis, but also stated that "all of his symptoms have significantly improved with his treatment". In regards to his history of substance abuse and other mental health symptoms, [Plaintiff] indicated he was seeing a psychiatrist once a month and a therapist once every two weeks. He was also attending group therapy for substance abuse on a weekly basis. Mental status evaluation revealed that [Plaintiff] had unremarkable hygiene and appropriate dress. He was generally calm and stable and maintained appropriate eye contact. He did not need simple directions or questions repeated and did not need multi-step directions or questions repeated. Although [Plaintiff] could not recall items after a five-minute delay, he had unremarkable recall of past and recent events. Further, [Plaintiff] was able to perform serial sevens and could repeat six digits forward and four digits backwards. The examiner observed that he had math skills in the average range, good fund of knowledge, and appropriate abstract abilities. The examiner noted that [Plaintiff] had good prognosis. [Plaintiff] was diagnosed with bipolar type II disorder, most recent episode depressed with psychotic features, opioid use disorder, severe, sustained remission, other substance use disorder, severe, early remission as related to methamphetamines (Exhibit 10F/2-6).

In September, October, and December 2020, [Plaintiff] was diagnosed with bipolar disorder, social anxiety disorder, severe opioid use disorder, and moderate methamphetamine-type substance stimulant use disorder. Mental status evaluation showed findings mostly within normal limits, including euthymic mood and affect. Although [Plaintiff] had only fair insight and judgment, he had normal memory and concentration findings. \*\*\*

\*\*\*

During a psychiatric follow-up examination in January 2021, [Plaintiff] was observed to be stable on seventy milligrams of methadone and had completed one year of sobriety for his opioid use disorder. He was advised to continue this treatment regimen (Exhibit 16F/23).

\*\*\*

3

> In April 2021, [Plaintiff] presented for a psychiatric evaluation. He reported he was doing well on seventy milligrams of methadone and was "stable on his mental health issues with lithium, Buspar, Latuda, and Trazadone". \*\*\*

(R. at 23–24).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2021 and has not engaged in substantial gainful activity since March 1, 2020, his alleged onset date of disability. (R. at 20). The ALJ determined that Plaintiff suffered from the severe impairments of hepatitis C, hepatitis B, hepatic steatosis, hypertension, decompensating exophoria and exotropia, obesity, bipolar disorder, social anxiety disorder, and a history of polysubstance abuse. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equal a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and carrying ten pounds frequently, twenty pounds occasionally. [Plaintiff] can sit, stand and walk each up to six hours in an eight-hour workday. [Plaintiff] can perform occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and frequent balance, stoop, kneel, crouch, and crawl. There should be no exposure to unprotected heights or moving mechanical parts. There should be no requirement to perform commercial driving as part of job duties. [Plaintiff] would be limited to performing unskilled simple, routine, and repetitive tasks. [Plaintiff] would be unable to perform at a production-rate pace (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner type positions). [Plaintiff] could have occasional contact with coworkers and supervisors, but no teamwork or tandem tasks and no over-the-shoulder supervision. There should be no contact with the general public as part of job duties. [Plaintiff] would be limited to occasional changes in an otherwise routine work setting, explained in advance to allow time for adjustment to new expectations. [Plaintiff] is unable to work with small objects, such as nuts and bolts, would be unable to read smaller than twelve-point font, and would be limited to occasional depth perception bilaterally.

(R. at 22).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record …" (R. at 25).

Relying on the vocational expert ("VE")'s testimony, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a nurse assistant, school counselor, an order filler, administrative assistant, clinical counselor, case worker, and customer service representative. (R. at 27). Further relying on the VE's testimony, the ALJ determined that Plaintiff would be able to perform the requirements of representative occupations in the national economy such as a housekeeping cleaner, a marker, or an office helper. (R. at 28–29). She therefore concluded that Plaintiff has not been disabled within the meaning of the Social Security Act, since March 1, 2020. (R. at 29).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538

(6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

On appeal, Plaintiff contends that the ALJ erred in her evaluation of the medical opinion provided by treating psychiatrist, Destry East, D.O. As to Dr. East's opinion, Plaintiff argues that the ALJ has (1) omitted from her consideration twenty-two of the twenty-seven areas of mental health limitations in which Dr. East assessed Plaintiff with an extreme or marked limitation; (2) conceded that Dr. East's opinion is supported by his evaluations; and (3) made a legally erroneous consistency argument by citing Dr. East's own examinations, thereby mistaking supportability for consistency. (Doc. 8). Plaintiff's arguments overlap so the Court addresses them together.

The Commissioner counters that the ALJ's mental residual functional capacity was supported by substantial evidence and she reasonably evaluated the state agency assessments and other evidence. According to the Commissioner, the ALJ also reasonably found the assessment of Dr. East to be only minimally persuasive, because Dr. East's checkbox form lacked any sort of supporting explanation or citation to the evidence. (Doc. 9).

A [Plaintiff]'s RFC is an assessment of "the most [a [Plaintiff]] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A [Plaintiff]'s RFC assessment must be based on all the relevant evidence in his or his case file. *Id*. *See also* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical

sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important; and the ALJ must explain how they were considered. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

Thus, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). "A minimum level of articulation is needed to provide sufficient rationale for a reviewing court." *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4650, 2022 WL 1793149, at *6 (S.D. Ohio June 2, 2022), *report and recommendation adopted*, No. 2:21-CV-4650, 2022 WL 2237057 (S.D. Ohio June 22, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021)). "An ALJ's failure to meet this minimum level of articulation frustrates the court's ability to determine whether a determination is supported by substantial evidence." *Id.* (citations omitted).

The ALJ found the opinion of Dr. East to be "minimally persuasive," noting in relevant part:

> Dest[r]y East, D.O., treating psychiatrist, opined in March 2021 that [Plaintiff] had marked limitations in his ability to learn, recall, or use information; marked limitations in his ability to relate to and work with supervisors, coworkers, and the public; extreme limitations in his ability to focus attention on work activities and stay on task at a sustained rate; and marked limitations in his ability to regulate his emotions, control his behavior, and maintain well-being in a work setting (Exhibit 15F/1-3). The [ALJ] has considered this opinion and finds that it is minimally persuasive. The findings are supported by prior evaluation completed by the provider. Nevertheless, the undersigned finds that the opinions are not consistent with the record as a whole, especially more recent records which show [Plaintiff] was stable and improving with treatment and sobriety. [Plaintiff] also endorsed feeling "pretty stable" during psychiatric evaluation (Exhibit 4F/50, 74). Further, mental status evaluation shows that [Plaintiff] had some deficits with his memory, insight and judgment. However, he generally had normal concentration, good fund of knowledge, appropriate abstraction skills, and normal mood and affect (Exhibit 4F/15-17, 31-33, 39-41; 10F/2-6).

8

(R. at 27). Here, the ALJ did not discuss the consistency factor in any meaningful way.

The ALJ found the supportability factor satisfied in Dr. East's medical opinion but said, with little explanation, that Dr. East's "opinions are not consistent with the record as a whole, especially more recent records which show [Plaintiff] was stable and improving with treatment and sobriety." (*Id.*). The ALJ failed to include any citations to the record to substantiate this point. Instead, the ALJ predominately cites Dr. East's own clinical notes from Plaintiff's therapy sessions. (*Id.* (citing R. at 397–99, 413–15, 421–23, 432, 456)). So all those citations speak only to the supportability of Dr. East's opinion.

Otherwise, the ALJ only cites a September 2020 disability assessment report based on two days of medical notes and one examination by reviewing psychologist, Dr. Sudhir Dubey, to support her conclusion that Dr. East's medical opinion is inconsistent with the record. (R. at 27 (citing R. at 699–706)). Regarding these records, R. at 699–706, the ALJ said

> The [Plaintiff] reported that his mood fluctuates. He noted he will feel "fairly stable" and later feel "paranoia" and "scared". Although he reported appetite loss on his medications, he indicated he had improved sleep. In regards to his anxiety, the [Plaintiff] reported shortness of breath and increased heart rate, as well as paranoia, especially around others. He endorsed auditory hallucinations on a weekly basis, but also stated that "all of his symptoms have significantly improved with his treatment". In regards to his history of substance abuse and other mental health symptoms, the [Plaintiff] indicated he was seeing a psychiatrist once a month and a therapist once every two weeks. He was also attending group therapy for substance abuse on a weekly basis. Mental status evaluation revealed that the [Plaintiff] had unremarkable hygiene and appropriate dress. He was generally calm and stable and maintained appropriate eye contact. He did not need simple directions or questions repeated and did not need multi-step directions or questions repeated. Although the [Plaintiff] could not recall items after a five-minute delay, he had unremarkable recall of past and recent events. Further, the [Plaintiff] was able to perform serial sevens and could repeat six digits forward and four digits backwards. The examiner observed that he had math skills in the average range, good fund of knowledge, and appropriate abstract abilities. The examiner noted that the [Plaintiff] had good prognosis. The [Plaintiff] was diagnosed with bipolar type II disorder, most recent episode depressed with psychotic features, opioid use

9

>disorder, severe, sustained remission, other substance use disorder, severe, early remission as related to methamphetamines.

(R. at 23). Based on these statements, it is not clear why the ALJ concluded that Dr. East's opinion is not consistent with these records. The ALJ's statements regarding these records are a mixed bag and, at the very least, acknowledge Plaintiff's struggles due to hallucinations and mood related problems. It seems plausible that these records are consistent with Dr. East's opinion; thus, further elaboration on why Dr. East's opinion is inconsistent with the record is needed to facilitate meaningful review.

More still, the ALJ cites this singular report from September 2020 (R. at 27) but fails to meaningfully review more recent medical records from January, February, March, and April 2021, when evaluating the consistency of Dr. East's March 2021 medical opinion. (*See* R. at 808 (February 8, 2021 record), 842 (April 6, 2021 record), 860–63 (January 7, 2021 record), 879 (March 8, 2021 record), 1026–027 (January 5, 2021 record), 1036 (February 2, 2021 record), 1052–053 (April 4, 2021 record)). In fact, the ALJ mentions these records only briefly in her entire decision, highlighting Plaintiff's methadone treatment and consistent use of prescription drugs for his mental health but failing to denote that the same records indicate Plaintiff was "not stable" and his "mood appeared to be labile." (R. at 24; *see* R. at 1026–027, 1052–053). The Undersigned is unable to determine whether the RFC is supported by substantial evidence where the ALJ did not minimally articulate how Dr. East's opinion is inconsistent with Dr. Dubey's report and where the ALJ failed to address—in any detail—medical records in close temporal proximity to Dr. East's opinion.

The Commissioner responds by arguing that substantial evidence supports the fashioned RFC. (*See generally* Doc. 9). In other words, the Commissioner wants the Court to look past the error and find that the RFC is otherwise supported. But the ALJ's "failure to follow agency rules

10

and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).  While there may be evidence in the record upon which the ALJ could have relied to find Dr. East's opinion inconsistent—and thus ultimately unpersuasive—the ALJ must still provide a "coherent explanation of [her] reasoning." *Hardy*, 2021 WL 3702170, at *4.  Because the ALJ failed to provide such an explanation, remand is required.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 8) be **GRANTED** and the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

IT IS SO ORDERED.


Date:  June 9, 2023                                   /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE